1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

K&SD ENTERPRISES, INC., *et al.*,

         Plaintiffs,

    v.

SHELL OIL PRODUCTS U.S., *et al.*,

         Defendants.

Case No.  C05-1972L

ORDER DENYING MOTION
FOR TEMPORARY
RESTRAINING ORDER

     This matter comes before the Court on a motion for a temporary restraining order filed by plaintiffs K&SD Enterprises, Inc. d/b/a Puget Park Shell, Harjinder Singh, Jasvir Singh Dhillon and his wife Rupinder Kaur (collectively, "plaintiffs").  Plaintiffs, who have not given defendants notice of the motion, seek to temporarily restrain defendants from terminating the Lease and Agreement between plaintiffs and defendant Shell Oil Products U.S. ("Shell") on November 30, 2005.

**A.    Background Facts.**

     Plaintiff K&SD Enterprises Inc. d/b/a Puget Park Shell ("K&SD") does business as a Shell station in Everett, Washington.  The individual plaintiffs are stockholders of K&SD.  Plaintiff Dhillon is the president of K&SD, and plaintiff Singh is the Vice

1   President.  K&SD purchased the Shell station in August 1998; it financed the purchase by

2   borrowing $465,600.00 from AT&T Small Business Lending Corporation through the

3   United States Small Business Administration's Guaranteed Loan Program.

4          In January 2004, K&SD entered into a Retail Sales Agreement (the "Agreement")

5   and a Retail Facility Lease (the "Lease") with Shell.  By certified letter dated August 23,

6   2005, Shell notified plaintiffs in writing that the Agreement and Lease would be

7   terminated effective November 30, 2005.  In the letter, Shell stated that it was terminating

8   the Agreement and Lease because Puget Park Shell had been out of one or more grades of

9   motor fuel for twelve or more hours on 10 individual days over the course of the period

10  from April 25, 2005 to August 11, 2005, which constituted a "failure to operate the

11  marketing Premises for seven consecutive days, or any lesser period that, under the facts

12  and circumstances, constitutes an unreasonable period of time."  Declaration of Jasvir

13  Dhillon, Ex. L.  The letter also stated that plaintiffs failed to comply with lease provisions

14  which required plaintiffs to maintain sufficient amounts of all grades of fuel and to devote

15  reasonable efforts to preserve the value of the station.  Shell stated that these

16  circumstances justified its termination of the Agreement and Lease.

17         Plaintiffs argue that the stated reasons for termination, under the facts and

18  circumstances, do not meet the criteria for termination of the Lease and Agreement set

19  forth in the Agreement.  Plaintiffs argue that defendants breached the contract by

20  terminating the Agreement and Lease in bad faith and without cause.  They argue that

21  "the times and amounts of Plaintiffs' running out of different 'flavors' of fuel over the

22  past several years does not constitute Plaintiffs'" breach of the contract.  Complaint at p.

23  8.  Plaintiffs contend that Shell's "acts and omissions with regard to providing fuel to

24  Plaintiffs is a material reason for each of the fuel shortages now complained of by

25

26  ODER DENYING MOTION FOR
    TEMPORARY RESTRAINING ORDER - 2

1  Defendants Shell and [its agent] Equilon." Id. at p. 8.

2  **B.    Analysis.**

3         The standard for issuing a temporary restraining order is the same as the standard

4  for issuing a preliminary injunction.  Thus, to qualify for a restraining order, the moving

5  party must show either (1) a combination of probable success on the merits and the

6  possibility of irreparable harm, or (2) that serious questions are raised and the balance of

7  hardships tips sharply in the moving party's favor.  See, e.g., Dumas v. Gommerman, 865

8  F.2d 1093, 1095 (9th Cir. 1989).  These standards are not treated as two distinct tests, but

9  rather as "the opposite ends of a single continuum in which the required showing of harm

10 varies inversely with the required showing of meritoriousness."  Rodeo Collection, Ltd. v.

11 West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987) (internal quotation and citation

12 omitted).

13        Plaintiffs concede that they have not given notice of the motion to defendants.

14 Plaintiffs' counsel states that on November 21, 2005, he

15        spoke to two employees of Defendant Shell, and advise[d] one, Mr. Lambert, that
          Plaintiffs would be going to court to attempt to prevent Defendants from taking
16        over their service station on November 30, 2005.  I was given the name of an
          attorney in Houston, Texas, who is allegedly corporate counsel for Shell, but was
17        also advised to send any correspondence relating to this matter through Mr.
          Lambert, who operates out of California.

18

19 Motion for TRO at pp. 2-3.  Plaintiffs' counsel does not identify Mr. Lambert's or the

20 other employee's position or scope of authority.  Plaintiffs do not explain why their

21 counsel did not contact Shell's corporate counsel or serve notice of the motion on its

22 registered agent.  Instead, plaintiffs' counsel states that he *plans* to contact Shell's

23 corporate counsel and serve Shell's registered agent on November 23, 2005.  However,

24 plaintiffs have not filed proof of service or updated the Court as to what, if any, efforts

25

26 ODER DENYING MOTION FOR
   TEMPORARY RESTRAINING ORDER - 3

1   they have made to provide notice.  These facts fall far short of providing a sufficient

2   explanation of why plaintiffs have not provided defendants with notice of this motion.

3         Regarding the merits of plaintiffs' claims, plaintiffs do not dispute that they were

4   unable to provide all brands of Shell gasoline on ten individual days or that failure to

5   operate the marketing premises for an unreasonable period of time is grounds for

6   termination under the agreements and the Petroleum Marketing Practices Act.  15 U.S.C.

7   § 2801 *et seq.* (setting forth permissible grounds for termination and non-renewal of

8   gasoline franchises).  Rather, plaintiffs argue that their failure was reasonable under the

9   circumstances because Shell's financial practices, including requiring K&SD to pay cash

10  on delivery for fuel, caused the shortages.  Although plaintiffs argue that the contracts do

11  not require them to pay cash on delivery, plaintiffs have not identified any contract

12  provision that prevents defendants from instituting that requirement.  Accordingly,

13  plaintiffs have not shown probable success on the merits or serious questions regarding

14  the merits at this point in the litigation.

15        The Court also considers the potential harm to the parties and the public.  The

16  Court cannot evaluate the harm to defendants because they have not had an opportunity

17  to respond to the motion.  Plaintiffs do not allege that the public's interest is implicated

18  by their claims.  Plaintiffs argue that if Shell terminates the Lease and Agreement,

19  "Plaintiffs Dhillon and Kaur will remain completely liable for the loan of over

20  $465,000.00 that they received to purchase the business in 1998, with Unconditional

21  Guarantees to the SBA, which will cause a grave financial hardship upon them for the

22  rest of their lives;[1] additionally, Plaintiff Harjinder Singh will lose his entire investment in

23

---

24        [1] Mr. Dhillon's declaration does not provide any additional details regarding the
    injuries they will allegedly suffer.  For example, it does not explain what the

25

26  ODER DENYING MOTION FOR
    TEMPORARY RESTRAINING ORDER - 4

1  the business."  Complaint at p. 7.  However, courts have explained that "economic injury

2  alone does not support a finding of irreparable harm, because such injury can be remedied

3  by a damage award."  <u>Rent-A-Center, Inc. v. Canyon Television & Appliance Rental,</u>

4  <u>Inc.</u>, 944 F.2d 597, 603 (9th Cir. 1991).  Here, plaintiffs have not alleged any non-

5  economic harm, and the Court finds that the economic harm alone cannot support a

6  finding of irreparable harm.  Instead, plaintiffs can recover their alleged economic losses

7  through a damage award if they succeed on the merits.

8       Furthermore, plaintiffs state that defendants notified them on or around August 23,

9  2005 of their intention to terminate the lease on November 30, 2005.  Plaintiffs, however,

10  have provided no explanation of why they chose to wait three months to file this motion.

11  In light of this timing, it appears that any emergency is of plaintiffs' own making.

12       Having considered plaintiffs' motion for a temporary restraining order and

13  supporting documents, the Court finds that plaintiffs have not shown that they will suffer

14  immediate and irreparable injury absent a TRO or that their motion should be granted

15  without notice to defendants.  Accordingly, the Court DENIES plaintiffs' motion for a

16  temporary restraining order (Dkt. #2).

17

18       DATED this 29th day of November, 2005.

19

20                    *MnR S Lasnik*

21                    Robert S. Lasnik
                      United States District Judge

22

23

24  "unconditional guarantee" entails or what, if any, personal assets plaintiffs pledged as

25  collateral.

26  ODER DENYING MOTION FOR
    TEMPORARY RESTRAINING ORDER - 5